UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCE MANN,

                Petitioner,               Case Number: 2:11-CV-13295
                                          HON. GEORGE CARAM STEEH

v.

CATHERINE S. BAUMAN,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Vince Mann seeks habeas corpus relief under 28 U.S.C. § 2254.  He is

a state prisoner in the custody of the Michigan Department of Corrections pursuant to a

conviction for second-degree murder.  He raises six claims for habeas relief.

Respondent argues that the petition is untimely, and that the claims are procedurally

defaulted and/or meritless.  The Court denies the petition.

**I.    Facts**

The Michigan Court of Appeals summarized the evidence adduced at trial leading

to Petitioner's convictions as follows:

> This case arises out of the November 2006, death of Ricky Arquette.
> Marisa Michalak testified that at approximately 2:30 a.m. on November 20,
> 2006, Randall Davis, along with Robert Ashby and David Cochran, picked
> her up to take her to Butler's house.  Butler was Michalak's boyfriend. En
> route to Butler's house, Michalak had Davis stop at a condominium
> complex.  At the complex, Arquette approached the vehicle and offered
> Davis money for a ride.  Davis agreed, although none of them had ever
> met Arquette before, and Arquette entered the vehicle.  They then drove
> directly to Butler's house.

-1-

Butler's house was located on Mercedes Street in Redford, Michigan. When Davis and his passengers arrived at the house, Butler was not at home.  A few minutes later, however, Butler arrived with his cousin Joseph Schork and roommates Larnie Neal and [Petitioner Vince] Mann. Everyone conversed and then went inside the house.  Michalak and Butler went upstairs to Butler's bedroom.  Shortly thereafter, Michalak heard commotion downstairs and someone say, "Hey you gotta get the f**k out of here," or words to that effect.  She then heard Mann call to Butler. Butler told Michalak to stay upstairs and he went downstairs.

While Butler and Michalak were upstairs, everyone else "hung out" downstairs.  Arquette was loud, obnoxious, and tried to do karate moves. When Arquette pushed Mann in the chest, Mann told him not to put his hands on him.  When Arquette pushed him again, Mann told him to leave the house.  Mann then yelled upstairs to Butler and removed his shirt in his bedroom.  While in the bedroom, Mann told Schork that Arquette had swung at him and said, "Let's get him ."  Mann then grabbed a glass beer bottle from the kitchen, walked into the living room, and hit Arquette on the left side of the head with the bottle when Arquette's back was turned.  The bottle shattered and Arquette fell to the floor.  Schork testified that Butler kicked Arquette in the head as he was falling, and Butler later admitted to the same to three additional witnesses.  Several other witnesses testified that as Arquette lay on the floor, Mann, Butler, Schork, Ashby, and Davis surrounded him.  They repeatedly kicked him in the body, face, and head.

Thereafter, Mann, Butler, and possibly others carried Arquette, who appeared unconscious, outside.  They left Arquette across the street on the neighbor's lawn and then returned to the house.  After a few minutes, Schork and Davis went back outside because they saw Arquette walking around. Davis then punched Arquette in the face.  Arquette's head and shoulder hit the neighbor's SUV.  He fell to the ground and hit his head on the cement with a loud thud.  Davis and Schork left Arquette unconscious on the neighbor's driveway.

In the early morning hours of November 20, police and paramedics arrived on the scene and took Arquette to the hospital for treatment.  Sergeant Eric Kapelanski subsequently conducted a canvas of the neighborhood and spoke to Mann and Butler.  Butler told the sergeant that at approximately 3:00 a.m., they saw four or five men assaulting someone across the street, but that the men had run away.  Mann confirmed Butler's story.  Neal testified that after the sergeant left, he, Mann, and Butler decided to remove a piece of the living room carpeting because Arquette's blood was on it.

Arquette died in the hospital on November 28.  Francisco Diaz, an assistant medical examiner for Wayne County, performed the autopsy on Arquette.  Arquette had several cuts, abrasions, and bruises on his face and head.  Diaz found an accumulation of blood under the scalp, primarily on the left side.  There was a one-inch linear fracture of the skull, a fracture of the right orbital roof, a subdural hematoma on the left side, bleeding into the coverings of the brain, and contusions on the brain as a result of blunt trauma.  Diaz explained that blunt force means force applied with a non-sharp object or surface.  He opined that Arquette sustained multiple inflicted blunt injuries due to being struck several times and that the cause of death was inflicted blunt trauma, mainly to the brain, and the complications resulting from being placed on a ventilator.  Diaz testified that the fracture to Arquette's skull could have been caused by falling unimpeded and hitting his head on an unyielding surface such as a vehicle, concrete, or a foot kicking his head while he was falling.  He further testified that striking a person on the head with a thick bottle and with enough force and velocity could cause a subdural hematoma.

Ljubisa Dragovic, the chief medical examiner for Oakland County and the only defense witness called, opined and testified that the cause of death was blunt trauma to the head and that the injuries to the base of Arquette's skull resulted from Arquette's head striking an unyielding surface, such as a floor, cement, or a metal structure.  According to Dragovic, Arquette's injuries were not the result of being struck with a beer bottle or kicked in the head.  Dragovic explained that the injuries were the result of a moving head striking an unyielding surface, as opposed to a stationary head being struck by a moving object.

On the afternoon of November 29, Sergeant Kapelanski again visited the Mercedes Street house.  He told Butler, Mann, and the other people present that Arquette had died and asked if they knew anything else about the men who assaulted him.  Butler told the sergeant the same story.  Neal and Michalak indicated that they had not observed anything that night.  Later on November 29, Sergeant Kapelanski returned to the Mercedes Street house after being called there by fellow officers executing an unrelated search warrant in the house.  Based on the evidence Sergeant Kapelanski observed – blood on the wall and bloody clothes in the washing machine – he obtained a search warrant for the house.  During the search of the house, officers took photographs of the evidence.  Then, during a subsequent search, pursuant to a different warrant, officers seized blood samples and a section of carpeting showing that some of the carpeting had been cut out and replaced.

On November 30, Officer Eric Norman of the Redford Police Department interviewed Mann and Butler individually while they were in custody at the

> Redford jail.  During Mann's interrogation, he admitted to punching
> Arquette.  Butler admitted, in a written statement and during the
> interrogation, to kicking Arquette in the head or neck once or twice.

*People v. Mann*, No. 281673, 2009 WL 3465495, at *1-3 (Mich. Ct. App. Oct. 27, 2009).

**Procedural History**

Petitioner was tried in a joint trial with co-defendant Thomas Reed Butler before

separate juries in Wayne County Circuit Court.  He was convicted of second-degree

murder, Mich. Comp. Laws § 750.317.  On October 9, 2007, Petitioner was sentenced

as a third habitual offender to 32 to 70 years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these

claims: (i) insufficient evidence; (ii) trial court improperly admitted Petitioner's taped

interrogation which referenced Petitioner's prior conviction; and (iii) trial counsel was

ineffective for failing to file a motion in limine to exclude reference to the prior conviction.

Petitioner also filed a motion to remand for an evidentiary hearing regarding the claim

that the victim's mother improperly communicated with jurors during a break.  The

Michigan Court of Appeals remanded the case to the trial court for the limited purpose

of an evidentiary hearing and decision on whether Petitioner should be granted a new

trial because of extrinsic influences on the jury.  8/5/09 Order, *People v. Mann*, No.

281673.  On remand, the trial court conducted an evidentiary hearing at which eleven of

twelve jurors testified.  The twelfth juror was unable to appear because of illness.  The

trial court found no extrinsic influence on the jurors and denied the motion for new trial.

1/22/09 Order, ECF No. 18-16.  The Michigan Court of Appeals then affirmed

Petitioner's convictions.  *People v. Mann*, No. 281673, 2009 WL 3465495, at *1-3 (Mich.

Ct. App. Oct. 27, 2009).

-4-

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals and a claim that his trial attorney was ineffective in failing to request lesser included offense jury instructions and an ineffective assistance of appellate counsel claim.  The Michigan Supreme Court denied leave to appeal.  *People v. Mann*, 486 Mich. 1050 (Mich. June 28, 2010).

Petitioner filed a petition for a writ of habeas corpus and a motion to stay the petition on July 28, 2011.  On August 25, 2011, the Court granted the stay to allow Petitioner to exhaust state court remedies.  (ECF No. 6).

Prior to filing his habeas corpus petition, Petitioner attempted to file a motion for relief from judgment in the trial court.  The motion, dated March 22, 2011, was rejected by the trial court on July 12, 2011, because Petitioner failed to file the motion in accordance with Michigan Court Rules.  7/12/11 Opinion and Order, ECF No. 18-20.  On September 20, 2011, Petitioner tried once again to file a motion for relief from judgment.  This motion was also rejected by the trial court for failure to comply with relevant state court rules.  11/7/11 Opinion and Order, ECF No. 25, Pg. ID 2332.  The trial court denied Petitioner's motion to amend his motion for relief from judgment on January 11, 2012 (ECF No. 18-25), and denied Petitioner's motion for reconsideration on March 2, 2012 (ECF No. 18-26).  Petitioner finally successfully filed a motion for relief from judgment on March 5, 2012.  The trial court denied the motion on April 2, 2012.  4/2/12 Opinion and Order, ECF No. 18-28.  The Michigan Court of Appeals and Michigan Supreme Court each denied Petitioner leave to appeal.  *People v. Mann*, No. 311545 (Mich. Ct. App. April 25, 2013); *People v. Mann*, 495 Mich. 900 (Mich. Nov. 25, 2013).

Petitioner then returned to this Court and moved for the stay to be lifted.  The

Court granted the motion and the matter was reopened.  The petition for writ of habeas

corpus raises these claims:

I.     The evidence was insufficient to convict of second-degree murder on
       either a direct liability theory or an aiding and abetting theory.

II.    The admission of an irrelevant and highly prejudicial video recording of
       Mann's entire police interrogation, where his prior incarceration was
       mentioned, violated due process.

III.   The jury instructions on: proximate cause, aiding and abetting, the victim's
       reputation for violence, and accomplice testimony relieved the State of its
       burden of proof and prevented the jury from considering defense, in
       violation of due process.

IV.    The prosecutor: (a) concealed a plea agreement with a key prosecution
       witness, (b) presented perjured testimony, (c) mischaracterized evidence,
       (d) shifted the burden of proof, and (e) denigrated defense counsel in
       violation of due process.

V.     Trial counsel was ineffective for failing to: (a) timely move to exclude the
       DVD, (b) investigate Randall Davis, and (c) object to prosecutor
       misconduct.

VI.    Appellate counsel was ineffective for failing to raise claims III, IV, V.B. and
       V.C.

## II.    Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405

(2000). An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

'highly deferential standard for evaluating state-court rulings,' and 'demands that

state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766,

773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)); *Woodford v.*

*Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562

U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for

relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at

102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

III.     **Discussion**

A.     **Statute of Limitations**

Respondent argues that the petition is untimely because Petitioner failed to comply with the terms of the stay.  The stay required Petitioner to file a motion for relief from judgment in the trial court within sixty days and file an amended petition in this Court within 60 days after the conclusion of state court proceedings.  Respondent argues that Petitioner failed to comply with the first requirement because he did not file a motion for relief from judgment in the trial court within 60 days of the stay order. Petitioner attempted to file a motion for relief from judgment in the trial court several times, before finally successfully filing his motion on March 5, 2012.  Respondent argues that the delay in filing the motion for relief from judgment should void any equitable tolling afforded the petitioner by the stay order and that the petition, therefore, is untimely.   The statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition.  *See Smith v. State of Ohio Dept. of Rehabilitation*, 463 F.3d 426, 429, n. 2 (6th Cir. 2006) (*quoting Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006)).  Simply put, the Court need not resolve the dispute over the timeliness of the habeas application.  Assuming without deciding that the current petition was timely, the petition fails on the merits.  *See Ahart v. Bradshaw*, 122 Fed. App'x 188, 192 (6th Cir. 2005).

### B.     Sufficiency of the Evidence

Petitioner's first claim concerns the sufficiency of the evidence.  He argues that the evidence was insufficient to support his second-degree murder conviction as either a principal or an aider and abettor.  "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319)).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998). The malice element is satisfied "by showing that the defendant possessed the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with the knowledge that death or great bodily harm would be the probable result. . . . Malice can be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Djordjevic*, 584 N.W.2d 610, 612 (Mich. Ct. App. 1998) (internal citation omitted). Under Michigan law, to convict a defendant of aiding and abetting a crime, the prosecution must, in general, establish that "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *Mann*, 2009 WL 3465495 at *3.

The Michigan Court of Appeals denied Petitioner's sufficiency of the evidence claim. The state court relied on the following evidence in reaching its decision: after Arquette pushed Petitioner, Petitioner called for Butler's assistance to "get" Arquette, Petitioner grabbed a glass beer bottle and struck Arquette in the head with it while Arquette's back was turned to Petitioner, Arquette fell to the floor, unconscious, suggesting that he was struck with considerable force, two witnesses testified that Petitioner kicked or stomped on Arquette's head while he was unconscious. *Id.* The Michigan Court of Appeals held that the foregoing evidence "was more than enough for

a rational jury to find that Mann intended to inflict great bodily harm, or serious injury of

an aggravated nature on Arquette." *Id.* (quotation omitted).

The Michigan Court of Appeals also rejected Petitioner's argument that his

actions did not cause Arquette's death. Two witnesses testified as experts in the field of

forensic pathology. The court of appeals held that, based upon their testimony, a

rational jury could have found that Petitioner's actions caused Arquette's deaths.

Moreover, the state court held that, "[e]ven if the jury did not conclude that Mann directly

caused Arquette's death, a rational jury could have concluded that Mann performed acts

or gave encouragement that assisted the commission of the crime." *Id.* (quotation

omitted).

On habeas review, this Court "does not reweigh the evidence or redetermine the

credibility of the witnesses whose demeanor has been observed by the trial court."

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v.

Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of

historical facts that supports conflicting inferences must presume – even if it does not

affirmatively appear in the record – that the trier of fact resolved any such conflicts in

favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558

U.S. 120, 133 (2010), (quoting *Jackson*, 443 U.S. at 326). The decision of the Michigan

Court of Appeals easily passes scrutiny under the deferential AEDPA standard, as the

appellate court applied the correct constitutional test, relied on facts amply supported in

the record, and did not unreasonably apply clearly established constitutional law.

**C.     Admission of Video Recording of Police Interrogation**

Petitioner argues that the admission of his videotaped police interrogation at trial

violated due process.  He argues that portions of the videotape referencing his prior

incarceration were unfairly prejudicial and irrelevant.  Respondent argues that this claim

is procedurally defaulted.   The Court need not address the issue of procedural default

because the claim is plainly without merit.  *See Lambrix v. Singletary*, 520 U.S. 518, 525

(1997) (procedural default is ordinarily addressed first, but resolution on the merits is

permitted where the issue is easily resolved).

"'[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.'"  *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir.

2007) quoting *Estelle*, 502 U.S. at 67-68, 112 S. Ct. at 480 (1991).  The standard of

review is therefore "very deferential" on claims regarding the admission of evidence in

state court.  *Hudson v. Lafler*, 421 F. App'x 619, 627 (6th Cir. 2011).  An evidentiary

ruling may violate due process only where it "is so egregious that it results in a denial of

fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Whether an

error in the admission of evidence "constitutes a denial of fundamental fairness turns

upon whether the evidence is material in the sense of a crucial, critical[,] highly

significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).

The Michigan Court of Appeals determined that DVD was properly admitted

under Michigan law.  *Mann*, 2009 WL 3465495 at *5-6.  First, the court of appeals noted

that the motion to exclude the DVD was not timely filed.  *Id.* at *6.  Second, the court of

appeals found reasonable the trial court's decision that redacting certain portions of the

DVD would have been obvious to the jurors and the jury "would have been left to

-13-

wonder what evidence was missing from the DVD." *Id.* Third, the court of appeals held that the references in the DVD to Petitioner's prior conviction were very brief and not the focus of the discussion. *Id.* The court of appeals also noted that the trial court twice instructed the jury not to consider evidence of Petitioner's prior convictions for any reasons. *Id.* at 7. Based upon these factors, the Michigan Court of Appeals held the DVD was properly admitted and that, even if its admission was improper, Petitioner suffered no resulting prejudice.

Petitioner fails to show that the alleged evidentiary error rose to the level of a federal constitutional claim warranting relief. "[U]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Lawson*, 535 F.3d 434, 442 (6th Cir. 2008) (internal citation omitted). The DVD's brief reference to Petitioner's prior convictions did not suggest a decision on an improper basis and the trial court twice carefully instructed the jury that the prior convictions could not be considered for any reason. Therefore, the state court's admission of this evidence was reasonable and did not result in a denial of fundamental fairness. Further, for these same reasons, Petitioner cannot show that he was prejudiced by his attorney's failure to earlier file a motion in limine to redact the DVD.

### D.   Jury Instructions

In his third claim, Petitioner argues that the jury instructions denied him his rights to a fair trial and due process. Specifically, he argues that the jury instructions on proximate cause, aiding and abetting, the victim's reputation for violence, and

-14-

accomplice testimony relieved the State of its burden of proof and prevented the jury from considering Petitioner's defense, in violation of due process.

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012), citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal habeas relief lies for a jury instruction claim only when the "instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates due process." *Id.* quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

The trial court rejected all of Petitioner's jury instruction claims in its opinion denying Petitioner's motion for relief from judgment. The court held that the instructions on proximate cause and aiding and abetting completely and accurately reflected Michigan law. The trial court further held that an instruction on the victim's reputation for violence was appropriate only where there is evidence that the defendant was aware of a victim's past. Here, there was no evidence that Petitioner knew the victim personally or by reputation prior to the murder. ECF No. 18-28, Pg. ID 2171-72.

The trial court reviewed the propriety of the instructions and held that, under Michigan law, the jury instructions were accurate and appropriate. It is outside the province of a federal court, on habeas review, to second-guess a state court's interpretation of state law. *Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003). Where a state appellate court has assessed the necessity and adequacy of a particular jury instruction under state law, a federal habeas court cannot question that state-law

-15-

finding.  *Id.*  Therefore, Petitioner's jury-instruction claims fail to state a claim upon which habeas relief may be granted.

### E.    Prosecutorial Misconduct Claim

Next, Petitioner argues for habeas corpus relief on the basis of prosecutorial misconduct.  He argues that the prosecutor concealed a plea agreement with prosecution witness Randall Davis, allowed Davis to falsely testify that he did not receive a plea agreement, mischaracterized the evidence, shifted the burden of proof, and denigrated defense counsel.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, — U.S.—, 132 S. Ct. 2148, 2153 (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id. quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must ask whether the Michigan Court of Appeal's decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155, *quoting Harrington*, 562 U.S. at 103.

First, Petitioner argues that the prosecutor concealed a plea agreement with prosecution witness Randall Davis and presented perjured testimony when Davis testified that he was not testifying pursuant to a plea agreement.  The trial court, in its order denying Petitioner's motion for relief from judgment, made a factual finding that

-16-

Davis did not have a plea agreement.  ECF No. 18-28, Pg. ID 2171.  Petitioner has

failed to show that the trial court's factual finding was erroneous. Therefore, Petitioner's

claims that the prosecutor concealed the plea agreement and allowed Davis to give

perjured testimony on this subject fails.

Second, Petitioner argues that the prosecutor misstated the evidence when he

told the jury that the defense expert testified that the fatal blow could have been caused

by a kick or blow from a bottle.  "Even if the prosecution's conduct was improper or even

universally condemned," a federal court on habeas review may grant relief only if "the

statements were so flagrant as to render the entire trial fundamentally unfair."  *Gillard v.

Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006).  Even assuming this statement was

inaccurate, it was not "so pronounced and persistent that it permeate[d] the entire

atmosphere of the trial."  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (1997) (internal

quotation omitted).  Additionally, the trial court correctly cautioned the jurors that what

the lawyers said was not evidence.  *See United States v. Carter*, 236 F.3d 777, 787 (6th

Cir. 2001) ("Ordinarily, a court should not overturn a criminal conviction on the basis of a

prosecutor's comments alone, especially where the district court has given the jury an

instruction that may cure the error.").  Petitioner presents no evidence to suggest that

the prosecutor intentionally made any improper statements.  The Court therefore

concludes that no misconduct occurred in this regard.

Next, Petitioner argues that the prosecutor improperly shifted the burden of proof

from the prosecution when he stated that the prosecution did not have to prove

Petitioner caused Arquette's death.  The trial court's instructions to the jury

unambiguously established that the prosecutor bore the burden of proof with respect to

each element of the crimes.  Therefore, even if the prosecution misstated the law, the error was cured by the trial court's instructions.

Finally, Petitioner argues that the prosecutor denigrated defense counsel when he argued that the prosecutor was disingenuous and arguing out of both sides of his mouth.  A prosecutor may not personally attack defense counsel, but the prosecution has "'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 223 (6th Cir. 2009), quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).  The prosecutor's argument cited by Petitioner highlighted the weaknesses in the defense and argued that these weaknesses rendered the defense theory unbelievable.  The prosecutor's arguments were reasonable arguments designed to persuade the jury to the prosecutor's theory of the case.

### F.   Ineffective Assistance of Trial Counsel

Petitioner raises several ineffective assistance of trial counsel claims.  He argues first that his trial counsel was ineffective in failing to file a motion in limine to redact the DVD.  He also argues that counsel was ineffective for failing to investigate Davis and failing to object to the claimed prosecutorial misconduct.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representation fell

below an objective standard of reasonableness." *Id.* at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and instead "emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687.

First, Petitioner argues that counsel was ineffective in failing to file a motion in limine to redact the DVD of Petitioner's custodial interrogation.  The Michigan Court of Appeals found that Petitioner failed to show any resulting prejudice.  *Mann*, 2009 WL 3465495 at *8.  Although counsel did not file a motion in limine, defense counsel moved to exclude the DVD before it was played for the jury.  *Id.*  The Michigan Court of Appeals held that Petitioner failed to show that a motion in limine had a reasonable

chance of success or that Petitioner was prejudiced by the admission of the non-redacted evidence.  *Id.*  The Court finds the state court's holding a reasonable application of *Strickland*.  Regardless of whether a motion in limine would have been successful, considering the evidence against Petitioner, it is not reasonably likely that omission of the brief references in the DVD to Petitioner's prior convictions impacted the verdict.

Next, Petitioner claims that defense counsel was ineffective for failing to investigate co-defendant Randall Davis.  The trial court denied this claim in denying Petitioner's motion for relief from judgment.  He argues that if counsel had conducted adequate investigation, he would have found testimony from Davis's own plea hearing regarding what Davis saw inside the home that could have been used to impeach Davis.  Marisa Michalak and Mario Schork testified that Petitioner had admitted to breaking a beer bottle over Arquette's head. Robert Ashby and Joseph Schork testified to witnessing Petitioner strike Arquette over the head.  Witnesses also testified that Petitioner kicked Arquette in the head after he fell to the ground.  There was also testimony that Petitioner said "Let's get him" after Arquette pushed Petitioner and just before Petitioner struck Arquette on the head with the bottle.  ECF No. 18-9, Pg. ID 1066.  Considering all of this testimony and the strength of the evidence against Petitioner, the trial court's decision that Petitioner was not prejudiced by counsel's failure to impeach Davis with inconsistencies in his testimony is not an unreasonable application of *Strickland.*

Finally, Petitioner argues that his defense counsel was ineffective for failing to object to several instances of prosecutorial misconduct.  As discussed above, Petitioner

has not shown that the prosecutor engaged in misconduct. Counsel is not deficient for failing to make a futile or meritless objections. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Habeas relief is denied on this claim.

### G.    Ineffective Assistance of Appellate Counsel

Finally, Petitioner raises a claim that his appellate attorney was ineffective in failing to raise claims raised in this habeas petition but not raised on direct appeal.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The claims raised in this petition and on collateral review in state court are meritless. Appellate counsel need not raise non-meritorious claims on appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Accordingly, the Court will deny habeas corpus relief on this claim.

## IV.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability

## V.    Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

Dated:  November 1, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Opinion were served upon attorneys of record on November 1, 2016, by electronic and/or ordinary mail and also on Vince Mann #315357, Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811.

s/Barbara Radke
Deputy Clerk

---